LOUISIANA FARMERS' PROTECTIVE UNION, Inc., v. GREAT ATLANTIC & PACIFIC TEA CO. OF AMERICA, Inc., et al.

No. 12204.

Circuit Court of Appeals, Eighth Circuit.

Nov. 2, 1942.

Cameron C. McCann,· of New Orleans, La. (Morrison & Sims and James H. Morrison, all of Hammond, La., and Edward R.

Schowalter, of New Orleans, La., on the brief), for appellant.

Russell V. Rogers, Jr., of Dallas, Tex.. and S. Lasker Ehrman, of Little Rock, Ark. (Grover T. Owens, E. L. McHaney, Jr., and Owens, Ehrman & McHaney, all of Little Rock, Ark., William H. Clark, Jr., and Clark, White & Rogers, all of Dallas, Tex., J. W. House, Jr., and House, Moses & Holmes, all of Little Rock, Ark., Monroe & Lehmann, of New Orleans, La., Caruthers Ewing, of New York City, and Frost & Jacobs, of Cincinnati, Ohio, on the brief), for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment dismissing a complaint in an action brought under § 7 of the Sherman Act to recover threefold damages for alleged violations of the Act as amended, 15 U.S.C.A. §§ 1, 15, on the ground that the complaint fails to state a claim against the appellees upon which relief may be granted.

The complaint as amended and as amplified by bills of particulars filed in response to motions on the part of the appellees may be summarized. The appellant is a non-profit co-operative corporation organized under the laws of Louisiana, composed of all the growers of strawberries in that state, more than 8,000 in number, who ship strawberries in interstate commerce. It is the marketing agency for its members, and by its constitution and bylaws it is authorized to protect its members "by every legal means in the bringing of class actions or of individual members or by the corporation itself for and on behalf of the member * * *", and its board of directors is given "the power to protect and represent legally or in the courts every member of said organization in the bringing of class actions, or individual actions, or in the bringing of an action for or on behalf of all the members of said organization, either by assignment oral or written, assigning whatever right said members may have or otherwise."

At a meeting of the union in Hammond, Louisiana, held on March 3, 1939, each and every member· of the union orally assigned to the appellant the causes of action here involved, and authorized the appellant in its name to bring the present suit to recover on the causes of action assigned. The oral assignments in question were ac-

complished by the unanimous passage at a meeting of the union, all members being present, of a resolution to that effect.

Of the appellees, the Great Atlantic and Pacific Tea Company of America, Inc., the Kroger Grocery and Baking Company, Inc., and Safeway Stores, Inc., are the owners and operators of chains of food stores, including more than 20,000 retail stores in more than thirty-five states. The other appellees are the buying subsidiaries of one or the other of the appellees mentioned.

The appellees in the years 1937 and 1938 purchased approximately twenty-five percent of the strawberries produced by the members of the appellant union and, in the years mentioned, entered into a conspiracy with the object and intent of stifling competition in and monopolizing retail distribution of strawberries and other food products throughout the United States. In the prosecution of this conspiracy the appellees, through their retail stores throughout the United States, sold strawberries of appellant's members as "loss leaders", that is, at prices at retail less than cost, with the intention and result of enabling them to dictate the price paid by them for Louisiana strawberries and also the price to the ultimate consumer, and to force out of business other retail dealers in competition with appellees' stores. The result of this concerted action upon the part of appellees was to drive out of appellant's strawberry market other purchasers of strawberries who were unable to meet the unfair and unlawful prices below cost at which appellees sold the strawberries in their retail stores in competition with such other purchasers; and thus to destroy competition in trade in strawberries and to create a monopoly in the strawberry market for the benefit of the appellees. This concerted action of the appellees resulted in the depreciation of prices in the Louisiana strawberry market, in the limitation of competition in Louisiana strawberries in interstate commerce, and in the establishment of a monopolistic control over interstate commerce in Louisiana strawberries in the hands of the appellees.

This illegal combination and its operation by the appellees depreciated the average price of strawberries shipped during 1937 in interstate commerce by appellant's members from $2.40 per crate to $1.57 per crate, causing a loss to the members in that year on 2,502,400 crates of strawberries shipped in interstate commerce in the sum of $2,076,992. In 1938 appellant's members shipped in interstate commerce 1,840,000 crates of strawberries for which they received an average price of $1.97 per crate, when, but for the conspiracy alleged, the appellant's members would have received an average price of $2.35 per crate, entailing a total loss to the members of the union of $699,200. Judgment was asked for three times the sum of the damages stated above, or $8,328,576, with interest, costs, and attorneys' fees.

In form the complaint was in three counts: the first charging violations by the appellees of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2; the second, violations of § 2 of the Clayton Act, 15 U.S.C.A. § 13; and the third, violations of § 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a. But this subdivision of the complaint into counts was more a matter of form than of substance, the violation of a separate section of the national anti-trust laws being charged in each count upon the same facts. Taking the complaint in its entirety, the gravamen of appellant's charge is that appellees, buyers of Louisiana strawberries, agreed with each other to control the price of berries by driving out of the market competing purchasers. This alleged conspiracy was made effective by selling to the consumer at retail prices either below cost or at prices so low as to eliminate competitors of appellees in the retail market, thus compelling other distributors of berries at wholesale who were buyers of Louisiana strawberries in interstate commerce for sale to competing retailers, to retire from the Louisiana market or to purchase only at the depreciated price fixed by the appellees; and by these actions the members of the appellant union sustained the damages claimed.

In sustaining the motion to dismiss, the district judge did not pass upon the question of whether the appellant had sufficiently alleged violations of the controlling acts of Congress nor decide whether the assignments of the members of the union to the appellant were valid under the Louisiana law. But assuming that the complaint was sufficient to charge the acts prohibited and that the assignments to appellant were valid, he was of the opinion that the complaint should be dismissed on two grounds: (1) Because appellant had not [40 F.Supp. 897, 906] "* * * alleged facts showing damage to the business or property of its assignors in an amount susceptible of expression in figures, proximately resulting

from the alleged illegal acts"; and (2) because " * * * the necessary causal relationship between the alleged violations of the statutes and the alleged damage to plaintiff's assignors, does not appear." For the reasons stated the district judge was of the opinion that appellant had "failed to state a cause of action upon which relief can be granted it"; that "the defects pointed out are inherent and basic and go to the heart of the complaint"; and "that nothing would be gained by deferring longer its dismissal." Accordingly the complaint was dismissed without leave to amend, and this action of the court presents the real issue here.

 To sustain the court below the appellees contend that the appellant has pleaded merely conclusions of law, setting forth in the words of the statute, a conspiracy among the appellees to establish a monopoly in interstate trade in strawberries, and that the complaint is barren of allegations concerning the acts of appellees constituting the alleged violations of law. It is conceded that more than this is required of the pleader in a civil action under the statute in question, but the complaint here is not so deficient in its allegations of ultimate facts as to justify its dismissal without leave to amend. The courts have always recognized the difficulty in actions of the character here, inherent in the nature of the case, in setting forth in precise detail the acts constituting the alleged violations of the anti-trust laws. Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815; Swift & Co. v. United States, 196 U.S. 375, 395, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518; Buckeye Powder Co. v. E. I. Du Pont de Nemours Co., D.C., 196 F. 514. And since the adoption of the Rules of Civil Procedure, the cases require of the pleader only a plain and simple statement of his case in conformity to Rule 8(a), 28 U.S.C.A. following section 723c. It is not necessary to set out in detail the acts complained of nor the circumstances from which the pleader draws his conclusions that violations of the acts of Congress have occurred and the pleader has been damaged. C. E. Stevens Co. v. Foster & Kleiser Co., 311 U.S. 255, 61 S.Ct. 210, 85 L.Ed. 173; Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583; Stewart-Warner Corp. v. Staley, D.C., 42 F.Supp. 140; Luebke Co. v. Manhardt, D.C., 37 F.Supp. 13; Metzger v. Breeze Corp., D.C., 37 F.Supp.

693; Kentucky-Tennessee L. & P. Co. v. Nashville Coal Co., D.C., 37 F.Supp. 728.

 The complaint here charges an agreement or combination among appellees to control prices in interstate commerce in Louisiana strawberries, and thus to eliminate competition in interstate commerce. Such agreements are in direct violation of the Sherman Act. United States v. Univis Lens Co., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408; United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L. Ed. 1461. Acts in themselves lawful considered alone, if a part of a plan for controlling prices to eliminate competition in interstate commerce, are unlawful. United States v. Socony Vacuum Oil Co., 310 U. S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852. It is the character and not the extent of the control which the law denounces. The amount of interstate commerce or trade involved is not material. United States v. Socony Vacuum Oil Co., supra. Here the complaint charges a combination among appellees to control prices and to destroy competition in interstate trade in Louisiana strawberries, and that appellees' acts pursuant to the agreement among them resulted in damage to appellant's assignors in their business.

Appellees also argue that § 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, on which the third count of the complaint is based, is a criminal act and not a part of the anti-trust laws within the meaning of § 7 of the Sherman Act, giving the right of action for damages in a civil suit. And they contend that the section in question is unconstitutional because it is too indefinite and uncertain in its definition of unreasonable prices to be enforceable either as a criminal or a penal statute. There is authority to the contrary. Midland Oil Co. v. Southern Refining Co., D. C., 41 F.Supp. 436; Kentucky-Tennessee L. & P. Co. v. Nashville Coal Co., supra. But the question raised is not necessary to the decision of this case, and we do not decide it. The acts charged as violations of the Robinson-Patman Act in count three of the complaint were the same as those charged as violations of the Sherman and the Clayton Acts in counts one and two. Appellant's cause of action remains even if appellees' argument here is correct.

With respect to the first of the grounds assigned by the court for dismissal, the district judge said: "It will be noted that the plaintiff sues for no damage to itself, and bases its right to maintain the suit solely upon the 8,795 assignments. Therefore, the plaintiff is suing as assignee on 8,795 separate, individual claims. Now, had any one of the assignors brought suit against the defendants in his own name and upon his own claim, it would, of course, have been necessary that he allege damage to his business or property proximately resulting from the alleged unlawful acts of the defendants and in some amount susceptible of expression in figures; and the fact that he assigns his claim to another party cannot change this rule in the least." With this statement of the district judge we are in full accord, but the defect in the complaint there pointed out extended only to the amount of damages sustained by each of appellant's assignors. It could, and should have been corrected by requiring this damage to be stated with respect to each of them, the damage to each assignor to be computed upon actual, and not upon average prices received, and the basis of computing the damage to be shown. The court had previously required the appellant, in ruling upon appellees' motion for a bill of particulars, to give the names and addresses of each of the assignors, but had declined to act upon appellees' request for a statement of the amount of damage received by each assignor. The reason advanced by the court for this action was that the latter question should more properly be decided upon a motion to dismiss. We think the contrary of this proposition is correct and, therefore, that this action upon the part of the court, instead of justifying an order of dismissal without leave to amend in this respect, required that the leave to amend be granted.

Nor can we agree with the position of the district judge upon the second ground for dismissal. After stating the substance of the complaint, the district judge said of it: "We do not think that the plaintiff has here stated facts which logically lead to the conclusion that the damage claimed proximately resulted from the alleged unlawful acts on the part of the defendants. We do not think that the plaintiff has alleged facts showing an effective monopoly, that is, a monopoly sufficiently effective to bring about the alleged damage to plaintiff's as-signors." The court took judicial notice that there was no monopoly in the retail food business in the United States and concluded that the allegations of the complaint, that a monopoly in strawberries by reason of appellees' acts was created and was effective to damage the appellant, could not be accepted as true "even upon a motion to dismiss." The district judge was unable to believe the allegations of the complaint, that all of the strawberry growers in Louisiana who shipped strawberries in interstate commerce were members of the appellant union, or that all of them had assigned their claims to the appellant. He thought that the price of Louisiana strawberries in 1937 and 1938 might as well have been controlled by over-production or by competition with berries from other states, and noted as an important circumstance the failure of the complaint to explain the difference in the number of cars shipped by the Louisiana growers in 1937 and 1938.

It may be that the conclusions drawn by the district judge will prove correct when the evidence is in, but they are of a character usually to be drawn from the evidence after a hearing and not from the bare allegations of the pleadings. One of the issues which appellant in this case sought to submit to the test of proof, was whether damage claimed had been sustained as the proximate result of the unlawful acts of the appellees charged in the complaint. Usually conclusions of this character rest upon inferences from facts within the exclusive province of the jury, and cannot be drawn until the evidence is in. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 560, 51 S.Ct. 248, 75 L.Ed. 544.

This court frequently has commented upon the considerations which should govern in ruling upon a motion to dismiss a complaint for insufficiency of statement. It is unnecessary to repeat here what the court has said on many occasions, particularly in the case of Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302, in which reference is made to many of the pertinent decisions of this court. It is enough to observe, as was done in the Leimer case, that no matter how improbable it may be that the plaintiff can establish the allegations of its complaint, it is, nevertheless, entitled to the opportunity to make the attempt. The opinion of the district judge, in advance of a

hearing, as to the impossibility of proof of a cause of action fairly stated, is not decisive of the rights of the parties. And see Sparks v. England, 8 Cir., 113 F.2d 579, 581.

The district court did not pass upon the validity of the appellant's assignments under Louisiana law and we do not decide the question. It is to be observed that the jurisdiction of the district court in this case does not depend upon the amount in controversy. The validity of the various assignments, more than 8,000 in number, may, and doubtless will, turn upon the evidence offered in respect to each of them. And the jurisdiction of the district court will remain though the evidence fails to sustain the validity of all of the assignments. For this reason the decision of this question may properly be deferred until the trial of the case upon its merits, or until the reception of evidence concerning the assignments.

We think the court erred in dismissing the complaint without leave to the appellant to amend. Accordingly the judgment is reversed, and the case is remanded with directions to the district court to grant the appellant a reasonable time in which to amend the complaint by setting out the amount of the damage claimed to have been received by each of the appellant's assignors and the basis upon which the amount was computed, and for further proceedings in conformity with this opinion.