**NORTH LITTLE ROCK TRANSP. CO., Inc., v. CASUALTY RECIPROCAL EXCHANGE et al.**

No. 14061.

United States Court of Appeals Eighth Circuit.

April 5, 1950.

Frederick U. Andres, Little Rock, Ark., submitted brief for appellant.

Malcolm W. Gannaway and James B. Gannaway, Little Rock, Ark., submitted brief for appellee Casualty Reciprocal Exchange.

James B. Donovan, New York City, Wright, Harrison, Lindsey & Upton, and Edward L. Wright, Little Rock, Ark., submitted brief for appellees National Bureau of Casualty Underwriters, Aetna Casualty & Surety Co., and others.

Ike Murry, Attorney General of the State of Arkansas, and Arnold Adams, Assistant Attorney General of the State of Arkansas, submitted brief for intervener, J. Herbert Graves, Insurance Commissioner of the State of Arkansas.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This Court is asked by the appellant to reverse a summary judgment of dismissal entered by the District Court. The judgment is based upon a determination that the fixing of rates by the National Bureau of Casualty Underwriters for casualty insurance written in the state of Arkansas by the members and subscribers of the Bureau is not violative of § 1 of the Sherman Act, as amended, 26 Stat. 209, 50 Stat. 693, 15 U.S.C.A. § 1, prohibiting combinations in restraint of trade or commerce among the several States.

The North Little Rock Transportation Company, Inc., a taxicab company operating in the area of Little Rock, Arkansas, brought this action under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, for an injunction and treble damages against the Casualty Reciprocal Exchange, the National Bureau of Casualty Underwriters, and forty-nine casualty insurance companies. All of the defendants were licensed to do business in Arkansas. The casualty insurance companies which were joined as defendants write more than one-half of the casualty insurance in the State. The plaintiff in its complaint alleged, in substance, that the defendants constituted a combination in restraint of trade and commerce in the establishment of rates for casualty insurance, and that, as a result of their operations in that regard, the plaintiff (evidently rated as a substandard risk because of a bad loss record) had been forced to pay, for its casualty insurance coverage, a premium which was excessive to the extent of $1,792.66, and had suffered damage in that amount. The plaintiff also alleged that Act 116 of the Acts of the General Assembly of the State of Arkansas 1947, in so far as that Act purports to justify the conduct of the defendants, is violative of the Sherman Act.

The defendants denied that they had violated the Sherman Act. They asserted, in substance, that the conduct of which the plaintiff complained was regulated by the laws of the State of Arkansas and authorized by Act 116 of the Acts of the General Assembly of Arkansas 1947 (providing for the regulation of casualty insurance rates), and that, because of the Act of March 9, 1945, 59 Stat. 33, 34, 15 U.S.C.A. §§ 1011–1015, known as the McCarran Act, the Sherman Act did not apply to the insurance business in so far as it was regulated by the State.

The Insurance Commissioner of Arkansas, with permission of the District Court, intervened on the side of the defendants. He asserted that Act 116 of the Acts of Arkansas, 1947, was valid, and he prayed for a dismissal of the plaintiff's complaint.

The District Court at a pre-trial hearing and upon motions of the defendants for a summary judgment of dismissal, determined that there was no genuine issue of fact involved in the case. The court also determined that the issues of law were as follows:

"A. Does the Sherman Act apply to insurance transactions which are regulated by Act No. 116, Laws of Arkansas, 1947?

176

"B.  Does the Sherman Act apply to the acts of which plaintiff complains?

"C.  Is the plaintiff entitled to the relief sought in the complaint?"

The court, after considering briefs filed by the parties, resolved all of these issues in favor of the defendants, and entered the judgment from which this appeal is taken.

The decision of the District Court, 85 F. Supp. 961, contains an adequate and accurate statement of the facts out of which the action arises.  We shall not indulge in needless repetition.  If the McCarran Act[1] is valid and effective and if Act 116 of the Acts of Arkansas 1947, is also valid, the plaintiff obviously can not maintain its action.

The McCarran Act and Act 116 of the Acts of Arkansas, 1947, the validity of which acts the plaintiff challenges, stem from the decision of the Supreme Court in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, holding that interstate insurance transactions are interstate commerce.  Prior to that decision, the regulation of the insurance business had been left exclusively to the States, in the justifiable belief that the business of insurance was not interstate commerce and was not affected by federal legislation dealing with such commerce.  See Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 415-418, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476. The purpose of the McCarran Act was to permit the States to continue the regulation of the business of insurance, unhampered, to the extent provided by the Act, by federal legislation relating to interstate commerce.  See Prudential Insurance Co. v. Benjamin, supra, page 429 of 328 U.S., page 1154 of 66 S.Ct.

In view of what was said by the Supreme Court about the effect of the McCarran Act in the Prudential Insurance Co. case and the case of Robertson v. People of State of California, 328 U.S. 440, 449, 461, 66 S.Ct. 1160, 90 L.Ed. 1366, there is no need for discussing the validity or effectiveness of the McCarran Act.  A ruling that it is invalid or ineffectual, we think, would be absurd.

The conduct of the defendants about which the plaintiff complains is authorized by Act 116, Acts of Arkansas 1947, which is entitled, "An Act Providing for the Regulation of Rates for Certain Casualty Insurance Including Fidelity, Surety and Guaranty Bonds and for All Other Forms of Motor Vehicle Insurance and . for the Regulation of Rating Organizations."  The first section of the Act, which reflects its

1. The McCarran Act, 59 Stat. 33, as amended, 61 Stat. 448, 15 U.S.C.A. §§ 1011-1015, so far as pertinent, provides:

"Sec. 1.  Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States. * * *

"Sec. 2. (a) The business of insurance, and every person engaged therein shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business unless such Act specifically relates to the business of insurance:  Provided That after June 30, 1948, the Act of July 2, 1890, as amended,

known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law. * * *

"Sec. 3. (a) Until June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, and the Act of June 19, 1936, known as the Robinson-Patman Anti-discrimination Act, shall not apply to the business of insurance or to acts in the conduct thereof.

"(b) Nothing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

scope, reads as follows: "The purpose of this Act is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this Act. Nothing in this Act is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit, or encourage except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This Act shall be liberally interpreted to carry into effect the provisions of this section." The Act authorizes the licensing of rating bureaus and provides for the establishment by them of casualty insurance rates to be charged by their members and subscribers.

The plaintiff contends that Act 116 is invalid under § 19 of Article 2 of the Constitution of Arkansas, providing that "Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed; * * *."

The case of National Union Fire Insurance Co. v. Dickinson, 128 Ark. 367, 194 S.W. 254, indicates that the Supreme Court of Arkansas would rule that legislation authorizing the establishment of insurance rates by a rating bureau, licensed and supervised by the State, does not create a monopoly, but that the bureau becomes, in effect, an agency or instrumentality of the State for determining the rates that shall be charged by insurers. In any event, unless and until the Supreme Court of Arkansas holds that Act 116 is violative of the State Constitution, the District Court and this Court are justified in assuming and deciding that the Act is valid. Harlow v. Ryland, 8 Cir., 172 F.2d 784, 786-787.

The plaintiff also contends that Act 116 did not repeal Section 66-203, Arkansas Statutes 1947, Annotated, which, in effect, prohibited companies writing property insurance from doing business in the State if they were members or subscribers of a rating bureau. The short answer to this contention is that § 18 of Act 116 pro-

vides: "All laws or parts of laws inconsistent with the provisions of this Act are hereby repealed."

It is our conclusion that this case was correctly decided by the District Court.

The judgment appealed from is affirmed.