312 F.2d 513
 136 U.S.P.Q. 54
 ATLANTIC & PACIFIC INSURANCE COMPANY, a Colorado insurance
corporation; and Hollis H. Marshall, Appellants,
v.
COMBINED INSURANCE COMPANY OF AMERICA, an Illinois insurance
corporation, Appellee.
 No. 6848.
 United States Court of Appeals Tenth Circuit.
 Nov. 21, 1962.
 
 William A. Black, Denver, Colo., for appellants.
 Russell P. Kramer, Denver, Colo. (Thomas T. Grimshaw, Denver, Colo., was with him on the brief), for appellee.
 Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This is an action for unfair competition between insurance companies and relates to sales methods, forms of policies, and to lists of policyholders and renewal dates in possession of salesmen who changed employment from the appellee to the corporate appellant, allegedly through improper efforts of this appellant's officers. The appellee seeks money damages and injunctive relief. Jurisdiction is based on diversity of citizenship.
 
 
 2
 The trial court found that the corporate appellant and the individual appellant, who is one of its officers, wrongfully induced appellee's salesmen to quit and to come to work for the appellant corporation for the purpose of securing confidential information in their possession, and used it to sell comparable insurance to appellee's policyholders. The court considered this to be unfair competition and awarded damages. The court also found other wrongful acts on the part of appellants but stated there was no remedy for them in this action.
 
 
 3
 Appellants here assert that the trial court was in error in (1) admitting an exhibit (No. 28) which was a summary of certain of appellee's records; (2) in taking jurisdiction in spite of the McCarran Act (15 U.S.C.A., 1011-1015); (3) in finding appellants guilty of conspiracy to commit civil contempt involving a state court proceeding; and (4) in its findings as to the pirating of appellee's employees to secure information and in awarding damages therefor.
 
 
 4
 As to the application of the McCarran Act (15 U.S.C.A. 1011-1015), the appellants argue that it, together with certain Colorado statutes (Ch. 72-15-1 to 72-15-13, 1953 Colo.Rev.Stats.), removes unfair competition suits involving insurance companies from the jurisdiction of federal district courts in Colorado.
 
 
 5
 The United States Supreme Court, in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, held that the business of insurance was within the scope of the commerce clause of the United States Constitution, and consequently subject to federal regulation. As a result of this decision, the McCarran Act was passed with its general purpose stated in 15 U.S.C.A. 1011, as follows:
 
 
 6
 'Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.'
 
 
 7
 The Supreme Court has commented on the passage of the Act in Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 89 L.Ed. 806, where it said:
 
 
 8
 'Suffice it to say that even the most cursory reading of the legislative history of this enactment makes it clear that its exclusive purpose was to counteract any adverse effect that this Court's decision in United States v. South-Eastern Underwriters Association, 322 U.S. 533 (64 S.Ct. 1162, 88 L.Ed. 1440), might be found to have on State regulation of insurance. The House Report on the Bill as enacted is decisive:
 
 
 9
 "It is not the intention of Congress in the enactment of this legislation to clothe the States with any power to regulate or tax the business of insurance beyond that which they had been held to possess prior to the decision of the United States Supreme Court in the Southeastern Underwriters Association case.' H.R.Rep. No. 143, 79th Cong., 1st Sess. 3.'
 
 
 10
 Appellants point out that the provisions on unfair competition (72-15-1 provisions on unfair competition (72-15-1 to 72-15-13, 1953 Colo.Rev.Stats.). These provide for hearings to be initiated by the state insurance commissioner, with appeal therefrom to the Colorado courts. Appeallant argues that these statutes provide an exclusive remedy for appellee and further that only the Colorado officials and Colorado courts on appeal have jurisdiction. The McCarran Act serves to limit the authority of federal regulatory agencies as to practices in the insurance business in the face of state acts and in the absence of specific federal law (Federal Trade Comm. v. National Casualty Co., 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540), but it does not follow that there is thereby a modification of diversity jurisdiction of the federal courts.
 
 
 11
 The Colorado statutes make no provision for proceedings of the character here involved to be initiated before the Colorado Commissioner of Insurance. Instead provision is made only for hearings to be commenced by the Commissioner, and these apparently only in matters affecting the public generally, that is when the 'proceedings by him in respect thereto would be to the interest of the public' (Colo.Rev.Stats., Ch. 72, Art. 15, P6(1)). The hearings so initiated are to be concluded with the issuance of cease and desist orders if warranted, as no other remedy is provided. In the case at bar there was no adequate remedy available to the appellee except that afforded by the courts.
 
 
 12
 Appellants next urge that the court was in error in finding as a fact that the appellants were guilty of conspiracy to commit civil contempt in a state court proceeding. No damages were awarded on this point and the trial court expressly stated it could not afford a remedy to appellee on this complaint. This finding did not affect the substantial rights of the appellants and they have not met the burden of demonstrating prejudice. Jones v. Union Auto. Indem. Ass'n of Bloomington, Ill., 287 F.2d 27 (10th Cir.); Creekmore v. Crossno, 259 F.2d 697 (10th Cir.).
 
 
 13
 Appellants also complain of the admission into evidence of appellee's exhibit No. 28 which related to the matter of damages. It was offered to show a decline in appellee's business by reason of the activities of appellants complained of. This exhibit was described by the witness through whom it was first offered as 'the count of premium volume in Northern Colorado,' and for the entire state during certain periods of time. The witness explained that the exhibit was compiled by him from 'quarterly accumulation cards' and shows a 'summary' of activity for certain periods. The witness then described the record keeping procedures of his company. The documents from which exhibit No. 28 was derived were offered and admitted together with exhibit No. 28, and the court offered to give appellants' attorney time to examine them. The judge stated that at the conclusion of the trial if appellants' attorney wished, the matter would be continued for a reasonable time. There is no indication that such a request for continuance was made. Appellants had adequate opportunity to examine the basic material and there was no error in admitting exhibit No. 28. McDonald v. McFerson, 80 Colo. 4, 249 P. 496 (1926); Buchholz v. Union Pacific, 135 Colo. 331, 311 P.2d 717.
 
 
 14
 The trial court awarded damages for unfair competition it found to have taken place by acts of the appellants in wrongfully inducing appellee's employees to terminate their employment contracts in order to obtain the confidential information in the possession of these salesmen. The court awarded $7,800.00 for loss of business and $649.53 for expenses incurred in mitigation of loss. The loss of business and the expenses, as well as the wrongfulness of the methods of the acts of appellants, are based upon findings of fact made by the trial court which are adequately supported by the evidence. Likewise the findings relative to the actions of the individual defendant-appellant in inducing the appellee's employees to quit are clearly supported by the evidence.
 
 
 15
 Affirmed.